IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

ADRIAN ESCALANTE,               )    No. CV-F-06-280 REC
                                )    (Nos. CR-F-97-5266 REC and
                                )    04-5174 REC)
                                )
          Petitioner,           )    ORDER GRANTING PETITIONER'S
                                )    MOTION TO AMEND MOTION FOR
     vs.                        )    RELIEF PURSUANT TO 28 U.S.C.
                                )    § 2255, DENYING CERTAIN
                                )    CLAIMS IN PETITIONER'S
UNITED STATES OF AMERICA,        )    MOTION FOR RELIEF PURSUANT
                                )    TO 28 U.S.C. § 2255 AS
                                )    AMENDED, AND DIRECTING
          Respondent.           )    UNITED STATES TO ELECT
                                )    REMEDY FOR ALLEGED FAILURE
_____)    OF DEFENSE COUNSEL TO FILE
                                     NOTICE OF APPEAL WITHIN 30
                                     DAYS

     On March 13, 2006, petitioner Adrian Escalante timely filed

a motion for relief pursuant to 28 U.S.C. § 2255.  On March 27,

2006, petitioner timely a motion to amend his Section 2255

motion.

     In No. CR-F-97-5266 REC, petitioner was charged in Count 6

of the Second Superseding Indictment with conspiracy to aid and

abet the manufacture of a controlled substance.  Petitioner

1

pleaded guilty to Count 6.  Petitioner was initially sentenced on January 24, 2000 to 108 months in custody and 60 months of supervised release.  At this sentencing the court specifically advised petitioner of the following terms of supervised release: that he commit no federal, state or local crime, that he not illegally possess any controlled substances, that he not possess a firearm, and that the court imposed all of the special conditions, including special condition number 4, recommended by the Probation Office and listed on pages 18 and 19 of the Presentence Investigation Report, a copy of which petitioner stated to the court he had reviewed and discussed with counsel prior to sentencing.  Upon motion filed by the United States, petitioner's sentence was reduced to 50 months in custody and 60 months of supervised release subject to the terms and conditions previously imposed on January 24, 2000.  On December 31, 2003, a Petition for Warrant or Summons for Offender Under Supervision was filed.  The Petition for Warrant asserts that petitioner's supervised release commenced on November 16, 2001.  The Petition for Warrant alleged the following violations of petitioner's conditions of supervised release and prayed for the issuance of a warrant for petitioner's arrest:

**Charge 1: NEW LAW VIOLATIONS**

A) [¶] On November 4, 2003, the defendant was found in the possession of methamphetamine, in violation of Arizona Revised Statute 13-3407A1; and in violation of the general condition ordering him not to commit another federal, state, or local crime.

B) [¶] On November 4, 2003, the defendant was found in the possession of drug paraphernalia, in violation of Arizona Revised Statute 13-3415A; and in violation of the general condition ordering him not to commit another federal, state, or local crime.

C) [¶] On November 4, 2003, the defendant was found in possession of a firearm, in violation of Arizona Revised Statute 13-3102A8; and in violation of the general condition ordering him not to commit another federal, state, or local crime.

**Charge 2: RE-ENTRY INTO THE UNITED STATES WITHOUT CONSENT OF THE UNITED STATES ATTORNEY GENERAL**

On or before November 4, 2003, the defendant unlawfully re-entered the United States in violation of 8 USC 1326; and in violation of the general condition requiring that he obey all laws as well as special condition number 4, to wit: he shall not re-enter the United States without the consent of the Attorney General of the United States.

**Charge 3: FAILURE TO REPORT TO THE UNITED STATES PROBATION OFFICE (EASTERN DISTRICT OF CALIFORNIA) UPON RE-ENTRY INTO THE UNITED STATES WITHIN 72 HOURS**

On or about November 4, 2003, the defendant re-entered the United States.  Upon his return to the United States, the defendant failed to report to the United States Probation Office; in violation of Special Condition No. 4.

The Petition for Warrant was not accompanied by a statement of probable cause supported by oath or affirmation.  A warrant for petitioner's arrest was issued on January 4, 2004.  Petitioner was arrested on May 3, 2004 in Arizona and appeared before United States Magistrate Judge Irwin in the United States District Court for the District of Arizona on May 4, 2004.  Petitioner was

1  represented by appointed counsel at that hearing, a removal

2  hearing was waived, and a warrant of removal to the United States

3  District Court for the Eastern District of California issued.

4  Petitioner appeared in this court on May 28, 2004 before

5  Magistrate Judge Snyder.  Petitioner was represented by Assistant

6  Federal Defender Ament.  Magistrate Judge Snyder read the charges

7  in the Petition for Warrant to petitioner on May 28, 2004.

8  Because Assistant Federal Defender Ament advised Magistrate Judge

9  Snyder that petitioner would be represented by attorney Eric

10  Fogderude, the matter was continued to June 2, 2004 before

11  Magistrate Judge O'Neill.  At that hearing, Mr. Fogderude stated

12  that he had just received a copy of the Petition for Warrant and

13  asked for a continuance in order to review the Petition for

14  Warrant with petitioner.  The matter was continued to June 16,

15  2004 before Magistrate Judge Beck.  At that hearing Magistrate

16  Judge Beck again read the charges in the Petition for Warrant to

17  petitioner in open court.  Mr. Fogderude advised Magistrate Judge

18  Beck that petitioner had received a copy of the Petition for

19  Warrant.  The matter was continued to June 30, 2004.  On June 30,

20  2004, Mr. Fogderude obtained a continuance to July 6, 2004

21  because he had been informed that new charges were going to be

22  filed against petitioner and he believed that both matters would

23  be resolved at the same time.  At the hearing on July 6, 2004,

24  the court was advised that an indictment had been filed against

25  petitioner in No. CR-F-04-5174 REC.  Thereafter, the matter was

26  continued a number of times in tandem with matters proceeding in

4

1    No. CR-F-04-5174 REC.  On October 4, 2004, and pursuant to the

2    terms of the written Plea Agreement entered in No. CR-F-04-5174

3    REC, see infra, petitioner admitted to the violations in Charge

4    1(B)(possession of drug paraphernalia in violation of Arizona law

5    and the general condition of supervised release that petitioner

6    not commit another federal, state or local crime while under

7    supervision), in Charge 2 (that he unlawfully re-entered the

8    United States in violation of 8 U.S.C. § 1326 and in violation of

9    the general condition of supervised release that petitioner not

10   commit another federal, state or local crime while under

11   supervision and in violation of special condition of supervision

12   number 4 that, if deported during the term of supervised release,

13   defendant shall not re-enter the United States without the

14   consent of the Attorney General of the United States), and in

15   Charge 3 (that upon his return to the United States defendant

16   failed to report to the United States Probation Office in

17   violation of special condition of supervision number 4 that upon

18   any re-entry into the United States the defendant shall report in

19   person to the United States Probation Office in the Eastern

20   District of California within 72 hours).  On March 28, 2005, the

21   court revoked petitioner's supervised release and sentenced him

22   to six months incarceration to be served consecutively to any

23   undischarged term of imprisonment.  At no time did petitioner

24   assert that he did not have written or oral notice of the terms

25   and conditions of supervised release he was charged with

26   violating.  Petitioner did not file an appeal.

In No. CR-F-04-5174 REC, petitioner was charged with being a deported alien found in the United States in violation of 8 U.S.C. § 1326.  At all relevant times, petitioner was represented by counsel Thomas Richardson.[1]  On October 4, 2005, petitioner pleaded guilty pursuant to a written Plea Agreement.  In pertinent part, the Plea Agreement provides:

> **III.  <u>Agreements by Defendant</u>.**
>
> ...
>
> (c) The defendant shall not be permitted to withdraw his plea should the court fail to follow the government's sentencing recommendations;
>
> (d) The defendant expressly, knowingly and voluntarily waives his constitutional and statutory rights to appeal, including any rights to appeal his sentence on any ground and any appeal right conferred by 18 U.S.C. § 3742.  Defendant further agrees not to contest his sentence in any post-conviction proceeding, including, but not limited to, any proceeding under 28 U.S.C. § 2255.
>
> ...
>
> (f) The defendant agrees not to move for a downward departure of his sentence.  The defendant understands and agrees that this agreement by him includes, but is not limited to, not moving for a downward departure of his offense level, criminal history category, or criminal history points as defined by the United States Sentencing Guidelines.
>
> (g) To the extent that the defendant might have a right to have any facts that will be used to determine his sentence charged in the indictment and found by a jury beyond a reasonable doubt, the defendant waives that

---

[1]Petitioner was represented by Eric Fogderude until August 9, 2004, when Mr. Richardson was substituted as counsel.

6

right and consents to have the district court find any facts necessary for the imposition of sentence under the applicable lesser standard of proof determined by the guidelines and case law prior to <u>Blakely v. Washington</u>, (June 24, 2004). Defendant also agrees to waive any constitutional challenge to the validity of the federal sentencing guidelines and their application to his case.

(h) The defendant agrees that the sentence imposed in this case will be served consecutively to any other sentence that the defendant may be required to serve for any other state or federal case (excluding his currently pending supervised release violation in federal court in Fresno).

(i) The defendant agrees that he will admit a violation charges 1B, 2 and 3 of his supervised release in case CR-F-975266 REC. The parties are free to argue that any sentence imposed on that case will be served concurrently or consecutively to any sentence imposed in the case to which this plea agreement relates (CRF-04-5174 REC).

...

IV.  **Agreements by the Government**.

...

(a) The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in Section 3E1.1 of the United States Sentencing Commission Guidelines Manual; and

(b) The government will recommend that the defendant receive an additional two-level downward adjustment in offense level under U.S.S.G. § 5K3.1 for 'early disposition' of his case; and

(c) The government will recommend that the defendant be sentenced at the low end of the

7

1          applicable sentencing guideline range ....

2          The Presentence Investigation Report, prepared on December

3    16, 2004 calculated the base offense level as 8 pursuant to USSG

4    § 2L1.2.  16 levels were added pursuant to USSG §

5    2L1.2(b)(1)(A)(i) because petitioner was previously deported on

6    November 18, 2001, following a conviction for Conspiracy to Aid

7    and Abet the Manufacture of a Controlled Substance.  A 3 level

8    reduction in the base offense level was recommended pursuant to

9    USSG § 3E1.1(a) and (b) for acceptance of responsibility.  The

10   resulting base offense level was 21.  Petitioner's criminal

11   history category was IV.  Therefore, the guideline range for

12   imprisonment was 57 to 71 months.  However, because the United

13   States would make a recommendation for a 2-level downward

14   departure pursuant to USSG § 5K3.1, the Presentence Investigation

15   Report recommended a downward departure to a guideline range of

16   46 to 57 months and recommended that petitioner be sentenced at

17   the low end of that guideline range.  The United States did make

18   the recommended downward departure and petitioner was sentenced

19   on March 28, 2005 to 46 months in custody and 36 months of

20   supervised release.

21         Petitioner did not file a notice of appeal.

22         In his motion for relief under Section 2255 filed on March

23   13, 2006, petitioner contends that he was denied the effective

24   assistance of counsel on the following grounds:

25             1.  Whether advice on the enhancements apply
               were misled by counsel.
26

8

   2.  Failed to do legal research on relevant
facts of law, matters of potential relief
pursuant to U.S.S.G. § 5K2.0 a cultural
assimilation.

   3.  Failed to file motions on the Programs
available such as the 'Fast Track' pursuant
to the '2003 Protect Act' for an aliens
deportable which can bargain in plea
agreements.

   4.  Failure to conduct an object to
evidentiary hearing Pursuant to Booker
issues.

   5.  Failed to file a NOTICE OF APPEAL'S upon
defendant's request. and, or attorney's
motion to withdraw as counsel's Anders v.
California, 386 U.S. 738 ... (1967) must file
to move for leave.

   6.  Counsel's failed to perform adequate
pretrial indentification of such relief
consist of ineffective assistance of counsel
[sic].

Petitioner also contends that counsel was ineffective by failing

to file a motion to withdraw the guilty plea after the Supreme

Court issued its opinion in United States v. Booker, 543 U.S. 220

(2005).

  As noted, on March 27, 2005, petitioner filed a motion to

amend the Section 2255 motion.  Because the motion to amend was

filed within the one year limitation period applicable to Section

2255 motions, the court grants leave to amend.

  In the amendment, petitioner claims that his term of

supervised release in No. CR-F-97-5266 should not have been

revoked because "[t]he government did not produce sufficient

evidence that he violated Standard Condition One", because he did

not receive the conditions of supervised release in writing and

1  was not given oral notice of the conditions of supervision he was

2  charged with violating, and because this court lacked

3  jurisdiction to terminate supervised release pursuant to <u>United</u>

4  <u>States v. Vargas-Amaya</u>, 389 F.3d 901 (9th Cir. 2004), <u>rehearing</u>

5  <u>en banc denied</u>, 408 F.3d 1227 (9th Cir. 2005).

6  **A.  <u>Claims Relating to No. CR-F-97-5266 REC</u>.**

7  As noted, petitioner did not file an appeal from the

8  revocation of the term of supervised release and imposition of a

9  six month sentence to run consecutive to any other undischarged

10  sentence.  Petitioner makes no claim that he asked Mr. Richardson

11  to file an appeal in connection with this criminal action.

12  Consequently, to the extent that petitioner's claims that the

13  United States did not provide sufficient evidence that he

14  violated Standard Condition One and that he did not receive the

15  conditions of supervised release in writing, petitioner has

16  waived his right to raise these claims in a Section 2255 motion.

17  See <u>United States v. Schlesinger</u>, 49 F.3d 483 (9th Cir. 1994).

18  Even if not waived, petitioner's claim that the United

19  States did not provide sufficient evidence that he violated

20  Standard Condition One is without merit.  As set forth in the

21  Judgment in a Criminal Case filed on January 28, 2000 and in the

22  Amended Judgment in a Criminal Case filed on January 9, 2001,

23  Standard Condition of Supervision One provides that "the

24  defendant shall not leave the judicial district without

25  permission of the court or probation officer".  The Petition for

26  Warrant does not charge petitioner with a violation of Standard

10

Condition One.

    With regard to petitioner's claim that he did not receive a written copy of the terms and conditions of his supervised release and did not receive oral notice of the conditions of supervision, the standard practice of the Probation Office is to give a defendant a copy of the terms and conditions of supervision when the term of supervised release actually commences.  Here, however, petitioner was not actively supervised by the Probation Office because he was deported on November 28, 2001 following the completion of the term of incarceration imposed in No. CR-F-97-5266 REC.  Therefore, the Probation Office did not provide a written copy of the terms and conditions of supervision to petitioner.[2]  However, as noted supra, at petitioner's initial sentencing in No. CR-F-97-5266 REC on January 24, 2000, the court specifically advised petitioner of the following terms of supervised release: that he commit no federal, state or local crime, that he not illegally possess any controlled substances, that he not possess a firearm, and that the court imposed all of the special conditions, including special condition number 4, recommended by the Probation Office and listed on pages 18 and 19 of the Presentence Investigation Report, a copy of which petitioner stated he had reviewed and discussed with counsel prior to sentencing.

_____

    [2]The record before the court does not indicate whether the Bureau of Prisons or INS (now ICE) gave petitioner a copy of the terms and conditions of his supervised release prior to petitioner's deportation.

11

1    In arguing that he is entitled to relief with respect to

2  this claim, petitioner relies on United States v. Ortuno-

3  Higareda, 421 F.3d 917 (9th Cir. 2003).

4    In Ortuno-Higareda, the defendant appealed to the Ninth

5  Circuit from the district court's judgment revoking his term of

6  supervised release and sentencing him to imprisonment.  In

7  pertinent part, the Ninth Circuit addressed whether supervised

8  release was properly revoked when the government did not prove

9  that Ortuno has received notice of the supervised release

10  condition that he was charged with violating.  The United States

11  conceded that Ortuno was not given written notice of his

12  supervised release conditions.  421 F.3d at 922.  The Ninth

13  Circuit further held:

14            ... Ortuno was orally advised that he was
           subject to Special Condition One, which
15            provided that he 'shall not re-enter the
           United States without legal authorization.'
16            However, the Revocation Petition did not
           charge him with a violation of that
17            condition.  Instead, it charged him with
           violating Standard Condition One, which
18            provided that Ortuno 'shall not commit
           another federal, state or local crime during
19            the term of supervision.'  Ortuno was not
           informed at the hearing that he was subject
20            to this latter condition.  Because the
           government did not prove that Ortuno received
21            any notice, written or oral, that he would be
           subject to Standard Condition One, a
22            violation of that condition could not serve
           as the basis for revocation of his supervised
23            release.

24            It is insufficient that Ortuno was verbally
           advised that he would violate a condition of
25            his supervised release if he illegally re-
           entered the United States.  As we stated in
26            Ortega-Brito, the lack of written notice may

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14

be excused if a defendant received actual
notice of a condition and 'the revocation of
his release [is] based upon a violation of
*such condition* [].' *Id.* (emphasis added);
*see also id.* (stating that 'we must determine
whether [the defendant] received actual
notice of the *conditions, the violations of
which formed the basis for the revocation of
his supervised release*' (emphasis added)).
In disregarding noncompliance with the
statutory mandate, we did not go so far as to
hold that actual notice of one condition may
support revocation based on a violation of a
different condition.  We now hold that the
failure to provide the statutorily required
written notice will be tolerated only when
the government proves that the defendant
received actual notice of the very condition
that he is charged with violating ... Since
the Revocation Petition did not charge Ortuno
with a violation of Special Condition One,
his receipt of notice of that condition is
irrelevant.  Rather, the failure to give
Ortuno notice of Standard Condition One is
dispositive, and the court abused its
discretion in revoking his supervised
release.

15  421 F.3d at 923-924.

16      Here, the circumstances of petitioner's revocation of

17  supervised release are not similar to those in Ortuna-Higareda.

18  As noted, petitioner was advised by the court at sentencing of

19  the condition of supervised release that petitioner not commit

20  another federal, state or local crime.  Two of the charges which

21  petitioner admitted, i.e., Charge 1(B) and Charge 2 stated that

22  the violations were of the condition that petitioner not commit

23  another federal, state or local crime.  That Charge 2 also

24  asserted that the violation also was of special condition number

25  4 does not negate that petitioner was made aware of one of the

26  conditions that he violated.  While it is true that Charge 3,

13

which petitioner also admitted, refers only to the violation of special condition number 4, petitioner admitted at sentencing on January 24, 2000 that he had read the Presentence Investigation Report to which the special conditions of supervision were attached.  Therefore, petitioner's claim that revocation of supervised release was an abuse of discretion pursuant to Ortuna-Higareda is without merit because the record establishes that petitioner had actual notice of the conditions of supervision even though he may not have received a written copy of those conditions.

Petitioner also asserts "that if the court orally pronounced its decision regarding the imposition of 6 consecutive months, the petitioner would have a chance to argue or request the court to run these six months concurrent."  Although this assertion is not very clear, it appears that petitioner may be contending that he was denied his right of allocution during the proceedings at which supervised release was revoked.  Here, the court conducted a single hearing on March 28, 2005 to impose sentence on both the illegal reentry offense and the supervised release violations. At sentencing, Mr. Richardson addressed both matters and specifically requested that the sentence for the violations of supervised release run concurrent.  Thereafter, petitioner was asked by the court whether he had anything to say in his own behalf and petitioner responded "No. Nothing."  The court then sentenced petitioner for the illegal reentry offense and then revoked supervised release and sentenced petitioner to six months

14

consecutive.   Therefore, the record establishes that petitioner was not denied his right of allocution, that Mr. Richardson requested that sentence on the violations of supervised release run concurrent, and that petitioner, when asked to speak, had nothing to say.

Petitioner's claim that this court lacked jurisdiction to revoke his term of supervised release is a claim that cannot be waived by the failure to appeal.   Nonetheless, this claim is without merit.   Petitioner's reliance on <u>United States v. Vargas-Amaya</u>, <u>supra</u>, is misplaced.   Here, the record establishes that the warrant for petitioner's arrest pursuant to the Petition for Warrant was executed before the expiration of petitioner's supervised release term.   As held in <u>United States v. Ortuno-Higareda</u>, <u>supra</u>, 421 F.3d at 922:

> [B]ecause Ortuno's revocation proceedings were completed before the conclusion of his supervised release term, section 3583(e)(3) rather than section 3583(i) provided the revocation authority.   Therefore, that Ortuno was arrested pursuant to a warrant which was not supported by oath or affirmation did not deprive the district court of jurisdiction to revoke his supervised release.

**B.   <u>Claims Relating to No. CR-F-04-5174</u>.**

**1.   <u>Effect of Waiver in Plea Agreement</u>.**

To the extent that petitioner claims he was denied the effective assistance of counsel with regard to sentencing issues, petitioner's claims are barred by the waiver of his right to bring a Section 2255 motion set forth in the Plea Agreement.

A defendant may waive the statutory right to bring a Section

15

1  2255 motion challenging the length of his sentence.  United

2  States v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994); United States

3  v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1992), cert. denied sub

4  nom. Abarca-Espinoza v. United States, 508 U.S. 979 (1993).

5  Recently, the Ninth Circuit held that a claim of ineffective

6  assistance of counsel that challenges the voluntariness of the

7  waiver does not preclude jurisdiction over a habeas action

8  pursuant to 28 U.S.C. § 2254.  Washington v. Lambert, 422 F.3d

9  864 (9th Cir. 2005).

10     Here, petitioner does not claim that he did not knowingly

11 and voluntarily enter into the Plea Agreement or claim

12 ineffective assistance of counsel in connection with the

13 provision for the waiver in the Plea Agreement.  Therefore, to

14 the extent that petitioner claims that he was denied the

15 effective assistance of counsel at sentencing, his claims are

16 barred.

17          **2.  <u>Sentencing Claims</u>**.

18     Furthermore, even if petitioner's claims of ineffective

19 assistance of counsel at sentencing at not barred by the

20 provision in the Plea Agreement, petitioner has not demonstrated

21 ineffective assistance of counsel with respect to those claims.

22      Claims asserting the ineffective assistance of counsel are

23 analyzed under the two-prong test announced in Strickland v.

24 Washington, 466 U.S. 668 (1984).  As explained in United States

25 v. Quintero-Barraza, 78 F.2d 1344, 1348 (9th Cir. 1995), cert.

26 denied, 519 U.S. 848 (1996):

16

According to <u>Strickland</u>, there are two components to an effectiveness inquiry, and the petitioner bears the burden of establishing both ... First, the representation must fall 'below an objective standard of reasonableness.' ... Courts scrutinizing the reasonableness of an attorney's conduct must examine counsel's 'overall performance,' both before and at trial, and must be highly deferential to the attorney's judgments ... In fact, there exists a 'strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."' ... In short, defendant must surmount the presumption that, 'under the circumstances, the challenged action "might be considered sound trial strategy."' ... Thus, the proper inquiry is 'whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' ....

If the petitioner satisfies the first prong, he must then establish that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result would have been different ....'

Under these standards, petitioner's claim that counsel was ineffective because he "[f]ailed to file motions on the Programs available such as the 'Fast Track' pursuant to the '2003 Protect Act' for an aliens deportable which can bargain in plea agreements [sic]", is without merit.  Pursuant to the Plea Agreement, the Government did recommend at sentencing that petitioner receive an additional two-level downward adjustment in his offense level under U.S.S.G. § 5K3.1 for early disposition of his case.  § 5K3.1 provides:

Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program

17

1        authorized by the Attorney General of the
         United States and the United States Attorney
2        for the district in which the court resides.

3  The Commentary explains that § 5K1.3 "implements the directive to

4  the Commission in section 401(m)(2)(B) of the Prosecutorial

5  Remedies and Other Tools to end the Exploitation of Children

6  Today Act of 2003 (the 'PROTECT Act', Public Law 108-21)."   When

7  fast-track programs have been authorized by the Attorney General

8  and implemented, the defendant must "'agree to the factual basis

9  [of the criminal charge] and waive the rights to file pretrial

10 motions, to appeal and to seek collateral relief (except for

11 ineffective assistance of counsel).'" See United States v.

12 Martinez-Flores, 428 F.3d 22, 26 (1st Cir. 2005), cert. denied,

13 ___ U.S. ___, 2006 WL 236308 (2006).

14    Petitioner's claim that he was denied the effective

15 assistance of counsel because counsel failed to research and

16 argue at sentencing that petitioner was entitled to a downward

17 departure because of cultural assimilation pursuant to U.S.S.G. §

18 5K2.0 also fails.  Such an argument at sentencing would have been

19 a breach of the terms of the Plea Agreement, thereby raising the

20 possibility that the United States would seek to vacate the Plea

21 Agreement.

22    Furthermore, petitioner's apparent claim that he was denied

23 the effective assistance of counsel because counsel's advice that

24 the enhancement set forth in USSG § 2L1.2(b)(1)(A)(i) was

25 erroneous is also without merit.  It is apparent from

26 petitioner's motion that this claim of ineffective assistance of

counsel is based on the assertion that United States v. Booker,

543 U.S. 220 (2005), renders that enhancement unconstitutional.

However, in Booker, the Supreme Court held:

> [W]e reaffirm our holding in *Apprendi*: Any
> fact (other than a prior conviction) which is
> necessary to support a sentence exceeding the
> maximum authorized by the facts established
> by a plea of guilty or a jury verdict must be
> admitted by the defendant or proved to a jury
> beyond a reasonable doubt.

543 U.S. at 244.  The Ninth Circuit has further held that

"[a]lthough recent Supreme Court jurisprudence has perhaps called

into question the continuing viability of *Almendarez-Torres*, we

are bound to follow a controlling Supreme Court precedent until

it is explicitly overruled by that Court."  United States v.

Weiland, 420 F.3d 1062, 1080 n. 16 (9th Cir. 2005).

Consequently, any claim that counsel was ineffective at

sentencing because of a failure to argue against the application

of USSG § 2L1.2(b)(1)(A)(i) is foreclosed by these cases.[3]

### 3.    **Failure to Move to Withdraw Guilty Plea**.

---

[3]Weiland also negates petitioner's claim that his term of
imprisonment violates due process because it exceeds the two year
statutory maximum set forth in 8 U.S.C. § 1326(a).

As noted, petitioner contends that he was denied the effective
assistance of counsel because of counsel's failure to conduct an
evidentiary hearing pursuant to Booker and because of counsel's
failure to perform adequate pretrial identification "of such
relief".  It is unclear what point petitioner is attempting to
make.  However, as noted infra, Mr. Richardson did request a
continuance of sentencing in order to consider Booker.
Furthermore, there is nothing in the record before the court that
indicates any questions concerning petitioner's identification.
Therefore, the court concludes that petitioner has not established
entitlement to relief under Section 2255 with respect to these
claims.

Petitioner contends that he was denied the effective assistance of counsel when counsel failed to move to withdraw his guilty plea after the Supreme Court issued its decision in United States v. Booker, supra, on January 12, 2005.

In order to withdraw a guilty plea prior to the imposition of sentence, a defendant must "show a fair and just reason for requesting the withdrawal." Rule 11(d)(2)(B), Federal Rules of Criminal Procedure. This standard is applied liberally and a fair and just reason for withdrawal of a guilty plea includes intervening circumstances or any other reason for withdrawing the plea that did not exist when the defendant entered his guilty plea. See United States v. Ortega-Ascano, 376 F.3d 879, 883 (9th Cir. 2004).

Here, Mr. Richardson sought and obtained a continuance of sentencing because of the issuance of Booker between the time the plea was entered and the date set for sentencing. Therefore, it is apparent that Mr. Richardson was aware of Booker and the potential impact on petitioner. However, a motion to withdraw the guilty plea because of Booker would not have benefitted petitioner.

In Booker, the Supreme Court struck down the Sentencing Guidelines to the extent that the Sentencing Reform Act mandated the imposition of sentences predicated on facts not found by the jury or admitted by the defendant, an outcome following from the conclusion that the Sixth Amendment precludes a judge from enhancing a sentence based on extra-verdict findings (other than

20

the fact of prior conviction) in a mandatory sentencing regime.
543 U.S. at 244.   The Supreme Court remedied the Sixth Amendment
infirmity in the Sentencing Guidelines by making the Guidelines
effectively advisory.   The remedial portion of <u>Booker</u> agreed that
"without this provision - namely the provision that makes 'the
relevant sentencing rules mandatory and imposes binding
requirements on all sentencing judges' - the statute falls
outside the scope' of the Sixth Amendment's jury trial
requirement.   543 U.S. at 259.   Rather than engraft a jury trial
requirement onto the mandatory sentencing guideline system,
<u>Booker</u> severed from the Sentencing Reform Act of 1984 "the
provision that requires sentencing courts to impose a sentence
within the applicable Guidelines range (in the absence of
circumstances that justify a departure) and the provision that
sets forth standards of review on appeal, including <u>de novo</u>
review of departures from the applicable Guidelines range.'   <u>Id</u>.
Although the Sentencing Guidelines are now advisory,

> the Act nonetheless requires judges to take
> account of the Guidelines together with other
> sentencing goals.   See 18 U.S.C. § 3553(a)
> (Supp. 2004).   The Act nonetheless requires
> judges to consider the Guidelines 'sentencing
> range established for ... the applicable
> category of defendant,' § 3553(a)(4), the
> pertinent Sentencing Commission policy
> statements, the need to avoid unwarranted
> sentencing disparities, and the need to
> provide restitution to victims, §§
> 3553(a)(1), (3), (5)-(7) (main ed. and
> Supp.2004).   And the Act nonetheless requires
> judges to impose sentences that reflect the
> seriousness of the offenses, promote respect
> for the law, provide just punishment, afford
> adequate deterrence, protect the public, and

1          effectively provide the defendant with needed
           educational or vocational training and
2          medical care. § 3553(a)(2) (main ed. and
           Supp.2004) ....
3

4    Booker, 543 U.S. at 259-260.

5         Here, a motion to withdraw the guilty plea, if granted,

6    would have lost petitioner the reduction in his sentence because

7    of the reduction in his sentence because of acceptance of

8    responsibility under USSG § 3E1.1(a) and (b) and the reduction in

9    his sentence because of the "fast track" program under USSG §

10   5K3.1 and.  As noted, the guideline range prior to the reduction

11   under USSG § 5K3.1 was 57 to 71 months.  If petitioner lost the

12   benefit of the 3 level reduction for acceptance of

13   responsibility, the guideline range would have increased to 77 to

14   96 months and, again, petitioner would have lost the "fast track"

15   reduction.  As noted supra, petitioner's contention that the

16   decision in Booker undermines Almendarez-Torres is without merit.

17   Consequently, there would have been no benefit to petitioner by

18   withdrawing the plea on this ground.  As further noted,

19   petitioner argues that counsel was ineffective by failing to

20   argue for downward departure because of cultural assimilation.

21   Withdrawal of the guilty plea would have freed Mr. Richardson to

22   argue for such a downward departure upon petitioner's conviction

23   following jury trial.  However, there is no guarantee that a

24   downward departure based on cultural assimilation would be

25   granted by the sentencing court following trial.  When compared

26   with the sentencing benefits obtained for petitioner in the plea

                                   22

agreement, petitioner has not demonstrated that Mr. Richardson's

failure to move to withdraw the guilty plea was outside the wide

range of professionally competent assistance under the

circumstances of this case or that petitioner was prejudiced by

this failure.

### 4.  Alleged Failure to File Notice of Appeal.

The court addresses petitioner's claim that he was denied

the effective assistance of counsel when counsel failed to file a

notice of appeal after petitioner requested that he do so.

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme

Court addressed the showings required for a claim of ineffective

assistance of counsel because of counsel's failure to file a

notice of appeal.  The Supreme Court noted that it has "long held

that a lawyer who disregards specific instructions from the

defendant to file a notice of appeal acts in a manner that is

professionally unreasonable."  Id. at 477.  In United States v.

Sandoval-Lopez, 409 F.3d 1193 (9th Cir. 2003), the Ninth Circuit

held:

> If a defendant, even one who has expressly
> waived his right to appeal, files a habeas
> petition after sentencing and judgment
> claiming that he ordered his attorney to
> appeal and his attorney refused to do so, two
> things can happen.  The district court can
> hold an evidentiary hearing to decide whether
> petitioner's allegation is true, and if it
> is, vacated and reenter the judgment,
> allowing the appeal to proceed.  Or, if the
> state does not object, the district court can
> vacate and reenter the judgment without a
> hearing and allow the appeal to proceed,
> assuming without deciding that the
> petitioner's claim is true.  The case at bar

is a particularly plain instance of where
'ineffective assistance of counsel' is a term
of art that does not mean incompetence of
counsel.  It may be very foolish to risk
losing a seven-year plea bargain on an appeal
almost sure to go nowhere, in a major heroin
case.  Nevertheless the client has the
constitutional right, under *Flores-Ortega* and
*Peguero*, to bet on the possibility of winning
the appeal and then winning an acquittal ....

409 F.3d at 1198-1199.

Consequently, the court gives the United States the option

of demanding an evidentiary hearing to determine the truth of

petitioner's claim that Mr. Richardson failed to file a notice of

appeal in No. CR-F-04-5174 REC after being directed to so by

petitioner or of conceding the truth of petitioner's claim and

allowing the vacation and reentry of judgment so that petitioner

can file the notice of appeal.[4]

ACCORDINGLY:

1.  Petitioner's motion to amend motion for relief pursuant

to 28 U.S.C. § 2255 is granted.

1.  Petitioner's motion for relief pursuant to 28 U.S.C. §

2255 as amended is denied in part as set forth herein.

2.  The United States is ordered to advise the court by

written pleading within 30 days of the filing date of this Order

whether the United States demands an evidentiary hearing

---

[4]In the event the United States demands an evidentiary hearing
on this issue, the court will appoint counsel to represent
petitioner at such a hearing and order that the action be
transferred pursuant to random selection to another district court
judge for the purpose of conducting the evidentiary hearing and
determining whether or not petitioner is entitled to relief with
regard to this claim.

1  regarding petitioner's claim that Mr. Richardson failed to file a

2  notice of appeal after being directed to do so by petitioner or

3  whether the United States concedes the truth of petitioner's

4  claim.  All further proceedings shall be by order of this court.

5  IT IS SO ORDERED.

6  **Dated:  April 11, 2006**                    **/s/ Robert E. Coyle**
   668554                                        UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26